IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOSEPH M. MOTT, | * | |
|    Plaintiff, | * | |
| v. | * | Civil Action No. PX-17-0231 |
| ACCENTURE, LLP, | * | |
|    Defendant. | * | |

\*\*\*\*\*

**MEMORANDUM OPINION**

Plaintiff Joseph Mott ("Mott") brings this employment action against his former employer, Defendant Accenture, LLP ("Accenture"). Mott alleges in his Amended Complaint that Accenture discriminated against him on the basis of age, gender, national origin, and mixed motives during his employment; that Accenture illegally retaliated against him for engaging in protected activities; that his discharge from Accenture was unlawful in light of clear mandates of Maryland public policy; and that Accenture illegally withheld a bonus to which Mott is entitled. ECF No. 35 ("Amend. Comp.").

The Court previously denied Accenture's motion to dismiss and directed Mott to amend his complaint to cure identified deficiencies. *See* ECF No. 30. The Court also preliminarily entertained Accenture's grounds for dismissal of Count VI of Mott's Complaint, a claim for wrongful discharge against a clear mandate of public policy, but ultimately gave Mott time to consider whether it would pursue the Count. If Mott elected to persist in Count VI, the Court granted Mott leave to respond to Accenture's Motion to Dismiss as to that count.

On August 6, 2017, Mott filed an Amended Complaint that included Count VI. Amend. Comp. ¶¶ 68–76. Mott also responded to Accenture's arguments for dismissal of Count VI on August 16, 2017. ECF No. 38. Accenture replied on August 30, 2017. ECF No. 39. The Court now must decide whether to permit this claim to go forward. For the reasons discussed below, Count VI is **DISMISSED**.

I.  BACKGROUND

This case has been before this Court previously, and the facts alleged are largely unchanged. *See* ECF No. 30. Mott, who is now 64, is a resident of Maryland who is of American national origin. Mott worked remotely from Maryland for Accenture, an Illinois limited liability partnership qualified to do business in the State of Maryland. Amend. Comp. ¶¶ 1, 2, 6. In his Amended Complaint, Mott alleges that several of his supervisors and coworkers, including Charlotte Guillorit, a French national located in France, *id.* ¶ 9, Abe Zachariah, *id.* ¶ 10, Hollis Chen, *id.* ¶ 11, Arnaud Mottet, of French national origin, *id.* ¶ 11, Fauzia Zaman-Malik, *id.* ¶ 15, Catherine Walter, a French national who lives in Paris, *id.* ¶¶ 24, 36, Michael Camarotta *id.* ¶ 29, and Toni Corban *id.* ¶ 52, treated Mott in a hostile and discriminatory fashion, retaliated against him for protesting discrimination and hostility, and/or knowingly permitted others' hostile and discriminatory behavior toward Mott to continue. Mott also alleges that he was passed over for promotion within the company, with the position instead going to a younger, female, and non-American candidate. *Id.* ¶ 24. Mott further alleges that he was subject to an escalating pattern of alleged hostile and discriminatory conduct which culminated in his termination over the protests that Mott had lodged with Accenture leadership, including to Chad Jerdee, General Counsel and Chief Compliance Officer, and Patrick Rowe, Deputy General Counsel for the division in which Mott worked and Guillorit's supervisor. *Id.* ¶¶ 46, 49, 50–53.

2

Count VI specifically avers that Accenture's discriminatory practices, undertaken by its attorneys as supervisors, gives rise to a claim for the tort of wrongful discharge as against Maryland public policy. *Id.* ¶¶ 68–76. Mott points to the American Bar Association's Model Rules of Professional Conduct ("Model Rules") 8.4 and the Maryland Attorney's Rules of Professional Conduct ("MLRPC") Rule 19-308.4 as the sources of the public policy contravened by his discharge. *Id.* ¶¶ 69, 70. In relevant part, Model Rule 8.4 provides that it is professional misconduct for a lawyer to "engage in conduct that the lawyer knows or reasonably should know is harassment or discrimination on the basis of race, sex, religion, national origin, ethnicity, disability, age, sexual orientation, gender identity, marital status or socioeconomic status in conduct related to the practice of law." ABA Model Rules of Prof'l Conduct R. 8.4(g). The MLRPC, in turn, provides that it is professional misconduct for an attorney to "knowingly manifest by words or conduct when acting in a professional capacity bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status when such action is prejudicial to the administration of justice." Md. R. Attorneys R. 19-308.4(e). Mott further alleges that the Model Rules and the MLRPC constitute a clear mandate of public policy under Maryland law that gives rise to a heightened duties of care, which Accenture's attorneys violated by discriminating against him. Amend. Comp. ¶¶ 71, 72, 74.

Accenture counters that the Model Rules are not applicable in Maryland, that the Model Rules and the MLRPC do not constitute clear mandates of Maryland public policy, and that Mott may not recover under the tort of wrongful discharge because the same conduct can be addressed adequately by statutory remedies. ECF No. 39 at 3–4, 6–8. Accenture further argues that because the MLRPC expressly states that the rules do not give rise to a cause of action against attorneys, neither can it provide the basis for a wrongful discharge claim. *Id.* at 3–4. Accenture

3

also points out that Mott has not alleged that the MLRPC apply to any of the Accenture employees about whom he complains. *Id.* at 2–3.

## II. DISCUSSION

### A. Standard of Review

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must determine whether the complaint contains facts sufficient to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Factual allegations in the complaint are taken as true, but a court need not accept a plaintiff's legal conclusions, even when they are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must plead facts to support each element of the claim to satisfy the standard. *See McCleary-Evans v. Maryland Dept. of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015).

### B. The Tort of Wrongful Discharge in Violation of Public Policy

Although an at-will employment relationship in general may be terminated for any reason by either the employee or the employer, Maryland recognizes a limited exception to this rule when an employee's discharge "contravenes some clear mandate of public policy." *Adler v. Am. Standard Corp.*, 291 Md. 31, 35–36, 47 (Md. Ct. App. 1981); *see also Porterfield v. Mascari II, Inc.*, 374 Md. 402, 422–23 (Md. Ct. App. 2003). To state a claim for wrongful discharge in violation of public policy, a plaintiff must allege plausibly (1) that he was discharged, (2) that the basis for the discharge violated some clear mandate of public policy, and (3) that a nexus exists between the plaintiff's allegedly protected conduct and the decision to discharge him. *See Yuan v. Johns Hopkins Univ.*, 452 Md. 436, 451 (Md. Ct. App. 2017) (internal marks and citation

4

omitted). Importantly, the public policy which the plaintiff alleges provides the basis for the wrongful discharge claim cannot provide its own cause of action. *Makovi v. Sherwin-Williams Co.*, 316 Md. 603, 605 (1989). This is so because the purpose of the tort of wrongful discharge is "to provide a remedy for otherwise unremedied violations of public policy." *Porterfield*, 374 Md. at 423.

As an initial matter, Count VI cannot survive unless "a clear mandate of public policy" was "contravened by the discharge." *Porterfield*, 374 Md. at 423. Consequently, the Court must first determine whether Mott has averred the existence of a clear mandate of public policy.

Mandates of public policy are "confin[ed] . . . to clear and articulable principles of law," *Porterfield*, 374 Md. at 423 (internal marks and citation omitted), and the source of the mandate must "be a preexisting, unambiguous, and particularized pronouncement" that "make[s] the Maryland public policy on the topic not a matter of conjecture or even interpretation," *King v. Marriott Int'l, Inc.*, 160 Md. App. 689, 702 (Md. Ct. Spec. App. 2005) (internal marks omitted) (quoting *Adler*, 291 Md. at 45). *See also Miller v. U.S. Foodservice, Inc.*, 405 F. Supp. 2d 607, 610 (D. Md. 2005). Maryland courts have cautioned explicitly that not all laws or statements of public policy give rise to wrongful discharge claims. *See Yuan v. Johns Hopkins Univ.*, 227 Md. App. 554, 568 (Md. Ct. Spec. App. 2016) ("There are many public policies implicated in the employer-employee relationship, but few of them can form the basis for a wrongful discharge tort."). Nor have Maryland courts found that every state statute or regulation rises to the level of a clear mandate of public policy. *See Szaller v. Am. Nat. Red Cross*, 293 F.3d 148, 151 (4th Cir. 2002). Courts must "limit[ ] judicial forays into the wilderness of discerning public policy without clear direction from a legislature or regulatory source." *Id.* (quoting *Milton v. IIT Research Inst.*, 138 F.3d 519, 523 (4th Cir. 1998)). Such claims, cautions the Maryland Court of

5

Appeals, should be allowed sparingly, and must be narrowly circumscribed. *See Porterfield*, 374 Md. at 423.

Mott relies on the ABA Model Rules and the MLRPC as the sources of his claimed "clear mandate of public policy." Neither is sustainable. The Court addresses each in turn.

**A. ABA Model Rules**

Accenture argues that the Model Rules are guidelines, not rules that bind any particular jurisdiction or attorney. ECF No. 39 at 3. The Court agrees. Contrary to Mott's assertions, the Model Rules are not binding on any lawyers in any jurisdiction, let alone in Maryland. Rather, each jurisdiction is left to determine for itself whether to adopt the ABA Rules or other ABA guidance. *Cf.* American Bar Association, *ABA Model Rules of Professional Conduct—About the Model Rules*, https://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_professional_conduct.html (last visited Oct. 12, 2017) (the Model Rules "serve as models for the ethics rules of most states"); *Attorney Grievance Comm'n of Maryland v. Gregory*, 311 Md. 522, 531 (Md. Ct. App. 1988). Maryland has adopted only some of the Model Rules. *See* Model Rules Comparison, Md. R. Attorneys R. 19-308.4 (Maryland's rule is "substantially similar" to the language of the 2000 Amendments to the Model Rules, but noting that Rule 19-304(e) as well as commentary to the rule is dissimilar). Mott provides no legal support whatsoever to view the ABA Model Rules as the source of a mandate of *Maryland* public policy, let alone one that is sufficiently clear and definite that it may serve as the basis for his wrongful discharge claim. This Court will not stretch to give the Model Rules the force and effect of a clear mandate of public policy without more.

## B. MLRPC

As to the MLRPC, Count VI suffers from a more basic problem. Putting to one side whether the MLRPC can be construed as a clear mandate of public policy, Mott has failed to demonstrate how a policy embodied in the MLRPC would reach the Accenture employees about whom he complains. The Amended Complaint avers that Mott lives in and works remotely from Maryland. Amend. Comp. ¶ 1. However, Mott does not allege that any of the lawyers he worked with or for were Maryland-barred attorneys or were practicing law in Maryland. Indeed, the Amended Complaint in many instances demonstrates the opposite. *See, e.g.*, Amend. Comp. ¶¶ 9, 18, 24, 36.

The MLRPC plainly applies to lawyers admitted to the Maryland Bar or practicing before Maryland state and federal courts. No support exists to extend those rules to lawyers not admitted or practicing in Maryland. *Cf.* Md. R. Gen. R. 1-101 (Applicability); Md. R. Attorneys R. 19-305.5(a) ("An attorney shall not practice law in a jurisdiction in violation of the regulation of the legal profession *in that jurisdiction*."); Md. R. Attorneys R. 19-210 & Note (attendance at mandatory orientation program for newly admitted attorneys that includes coverage of the MLRPC is necessary "to assure that [they] are familiar with core requirements for practicing law in Maryland"); Md. R. Attorneys R. 19-214(d) ("An [out-of-state] attorney specially admitted is subject to the Maryland Attorneys' Rules of Professional Conduct during the pendency of the action or arbitration."); D. Md. Loc. R. 703, 704. Furthermore, Maryland has not expressed any interest in regulating the behavior of attorneys not barred or practicing in Maryland. To suggest that Maryland's public policy includes a *clear mandate* relating to the behavior of non-Maryland lawyers would require this Court to undertake a "foray[ ] into the wilderness of discerning public

policy," which this Court cannot do. *Szaller*, 293 F.3d at 151. Accordingly, Count VI based on claimed violations of the MLRPC must fail.

Notably, even if the MLRPC somehow reached the Accenture lawyers named in the Amended Complaint, the specific MLRPC provisions on which Mott relies do not constitute a clear mandate of public policy sufficient to sustain the wrongful discharge claim. Mott argues that the MLRPC "clearly demonstrate a public policy governing the conduct of lawyers as officers and managers of a corporation." ECF No. 38 at 8. However, the rule upon which Mott relies is limited to conduct "prejudicial to the administration of justice." Md. R. Attorneys R. 19-308.4(e). This rule on its face does not cover the day-to-day management of a law firm or other office. Mott attempts to stretch the significance of this provision by asserting it is intended to vindicate "the clear public policy . . . that 'a commitment to equal justice under the law lies at the very heart of the legal profession.'" ECF No. 38 at 12–13 (quoting Md. R. Attorneys R. 19-308.4 cmt. [4]). But this claim proves too much, because then every act of an attorney, in or out of the courtroom, client or non-client related, could be considered part of the "administration of justice." *Cf. King,* 160 Md. App. At 702 (the source of the mandate must be a "particularized pronouncement"); *Szaller*, 293 F.3d at 152 (it would be "astonishing" to impose the Code of Federal Regulations on Maryland employers through wrongful discharge claims in part because of the "overwhelming burden" it would place on them). This Court, therefore, does not endorse a generalized commitment to equality in the administration of justice as a clear mandate of public policy that can give rise to a wrongful discharge claim in the context of attorneys managing other attorneys in the workplace.

Mott principally relies on the Maryland Court of Appeals decision in *Post v. Bregman*, 349 Md. 142 (Md. Ct. App. 1998), to convince this Court otherwise, arguing that *Post* held the

MLRPC to constitute "an expression of public policy having the force of law." *Id.* at 163. But Mott misapprehends the force of *Post*. The Court of Appeals' holding was limited to a single MRLPC provision, MLRPC Rule 1.5(e), which governs fee splitting among lawyers from different firms and has no bearing on Mott's claims. *See Goldman, Skeen & Wadler, P.A. v. Cooper, Beckman & Tuerk, LLP*, 122 Md. App. 29, 43, 712 A.2d 1, 7–8 (Md. Ct. Special App. 1998) ("*Post* only explicitly concerns use of MLRPC Rule 1.5(e) as an equitable defense to a breach of contract suit. . . . *Post* clearly contemplates, however, that a defense based on the MLRPC may not be available in every circumstance."). Without more, this Court cannot read *Post* so broadly as to cover Mott's claim here. This is especially so when considering that even policies having the force of law do not necessarily give rise to a wrongful discharge claim. *See Szaller*, 293 F.3d at 151 (citing *Bagwell v. Peninsula Reg'l Med. Ctr.*, 106 Md. App. 470, 665 (1995)); *Yuan*, 227 Md. App. at 568 ("There are many public policies implicated in the employer-employee relationship, but few of them can form the basis for a wrongful discharge tort."); *cf. Stratagene v. Parsons Behle & Latimer*, 315 F. Supp. 2d 765, 774 (D. Md. 2004) (no legal malpractice claim under Rule 1.9 even assuming the MLRPC constitutes public policy having the force of law). Because Mott has not convinced this Court that a clear mandate of public policy inheres in MLRPC Rule 19-308.4, Count VI cannot survive.[1]

### III. CONCLUSION

Mott has failed to state a claim that plausibly entitles him to relief on Count VI of the Amended Complaint. Count VI is **DISMISSED** with prejudice. A separate order will follow.

---

[1] Because the Court has determined that Mott has failed to identify a clear mandate of public policy which has been breached, it need not reach Accenture's alternative argument that under *Makovi* and its progeny, that Count VI cannot proceed because a statutory remedy for the wrongdoing is already available to Mott. *See Porterfield*, 374 Md. at 423 (the first step in the wrongful discharge analysis is determining whether there is a clear mandate of public policy contravened by the discharge).

| 10/17/2017 | /S/ |
|---|---|
| Date | Paula Xinis |
| | United States District Judge |