**STONE MATTHEIS XENOPOULOS & BREW, PC**

July 16, 2018

**VIA ELECTRONIC MAIL**

The Honorable Paula Xinis
United States District Court
6500 Cherrywood Lane
Greenbelt, MD 20770

      Re:    *Joseph M. Mott v. Accenture LLP; Civ. No. 17-cv-00231*

On behalf of Plaintiff Joseph M. Mott, this correspondence is directed to you in accordance with the Court's Letter Order Regarding the Filing of Discovery Motions (Doc. No. 46; Dec. 12, 2017). The purpose of this letter is to seek direction from the Court regarding the production of the DrFirst text messages retrieved from the Plaintiff's mobile phone pursuant to the Court's Letter Order of June 27, 2018 (the "Order").

*Factual Background*

In its June 27, 2018 Order, the Court ruled that there was "absolute immunity from civil liability" for statements made in the judicial process which was not waived by the "non-disparagement agreement entered into by Mott and DrFirst." Order at p.1 quoting *O'Brien & Gere Engineers, Inc. v. Salisbury*, 447 Md. 394, 409-410 (2016).[1] The Court thereafter ordered the parties to submit a joint discovery plan that would include, inter alia, "discovery into Mott's text messages relating to his employment with and discharge from DrFirst." *Id.* The discovery plan was filed with the Court on July 2, 2018.

Pursuant to the joint discovery plan, a qualified computer forensic expert retrieved text messages on the Plaintiff's mobile phone "exchanged between Mott and DrFirst employees or representatives." Upon review of those messages (there are approximately 20), Plaintiff believes that many of them contain information that is covered by the attorney-client privilege. More

---

[1] In its June 22, 2018, Discovery Letter to the Court (Doc. No. 94), Accenture quoted from the Maryland Court of Special Appeals opinion to argue that an "absolute privilege" existed in the context of litigation. But on a writ of certiorari, the Maryland Court of Appeals rejected the concept of "absolute immunity" in proceedings where a settlement agreement is at issue. In his concurring and dissenting opinion in *O'Brien,* 447 Md. at 424, Judge Harrell summarized the majority rulings in the case as follows: "Although I agree with the Majority opinion's determinations that: . . . (3) the litigation privilege is *not* absolute; (4) the litigation privilege *may* apply to causes of action sounding in contract; and (5) the litigation privilege *may be waived*, which analysis is undertaken with a rebuttable presumption of non-waiver as a threshold …." *Id.* at 424. (citations omitted and emphasis added)." (Harrell, J. concurring and dissenting).



specifically, several of the text messages exchanged between the Plaintiff and other officers and employees of DrFirst contain or reference legal advice.

*Issues*

*First*, to the extent the attorney-client privilege is applicable to any of the text messages, it belongs to DrFirst, not to the Plaintiff. DrFirst has not appeared before the Court. Moreover, neither the Plaintiff nor his counsel has communicated with anyone at DrFirst, other than through the Joint Letter approved by the Court. The Plaintiff is requesting further guidance from the Court on how to proceed under these circumstances.

*Second*, Accenture wants to interrogate the DrFirst witnesses regarding the Plaintiff's performance and the grounds for his departure. This is clear from the deposition testimony already conducted regarding Plaintiff's employment with DrFirst. If DrFirst asserts the attorney-client privilege, there may be little to be discovered beyond the existing record confirming a dispute about performance.

In the deposition of DrFirst witness Edward Lee, Accenture counsel introduced as Exhibit 2 a January 6, 2018 e-mail by Mr. Lee in which he says in the very first sentence "This is an example of Joseph Mott non-performance." Exhibit A hereto. There is no evidence to support an arguable claim of "intentional misconduct" here. To the contrary, the evidence shows that, at most, there was a *bona fide* dispute regarding the grounds for the Plaintiff's departure from DrFirst.

Other documents, also produced in the litigation, confirm that the circumstances surrounding the Plaintiff's departure were performance-related. In the Plaintiff's January 23, 2018 letter to DrFirst Senior Vice President Irene Froelich, the Plaintiff indicated that when he asked for justification of his termination, he "was told that [he] exhibited a negative approach to the Patient Innovation (PI) sales group; and second, [he] failed to timely implement the use of the M-files [contract management software] program." Exhibit B hereto at 1. In response, the Plaintiff indicated that "[b]oth of these criticisms are inaccurate," and proceeded to explain why in the following paragraphs. *Id.* at 1-2. What matters about this exchange is not the question of which party was correct about the Plaintiff's performance. What matters is that his departure was clearly not about "intentional misconduct." This fact is underscored by the content of the Plaintiff's "90 Day Review" that he supplied to Mr. Froelich in connection with his January 23, 2018 letter. Exhibit B at 1 ("I had planned to present you with my 90-day performance review . . . [that] I am enclosing with this correspondence. . . ."); *id.* at 4-6. That document demonstrates that to litigate issues regarding his "performance" with DrFirst, the Plaintiff likely will need to testify about the legal advice he provided to DrFirst during his short tenure, some of which may have motivated the termination of his employment and which also would involve disclosure of matters which DrFirst would likely also regard as privileged communications.

In summary, if DrFirst asserts the attorney-client privilege, neither party will be able to discover the details surrounding the Plaintiff's performance. If, however, DrFirst is prepared to waive its privilege, then any such waiver should be construed in a manner that would not prejudice

The Honorable Paula Xinis
July 16, 2018
Page 3



the Plaintiff's right to respond. Should DrFirst decide to support its claim of unsatisfactory performance by relying on otherwise privileged communications, the Plaintiff likewise should be entitled to rely on otherwise privileged communications to rebut those claims, as appropriate.

Respectfully submitted,

Christopher G. Mackaronis, Esq.
Stone Mattheis Xenopoulos & Brew, PC
1025 Thomas Jefferson Street, N.W.
8th Floor, West Tower
Washington, D.C. 20007
202-342-0800
cgm@smxblaw.com

*Attorney for Plaintiff*